United States Court of Appeals
For the Eighth Circuit

_____

No. 12-3272
_____

Alcan Packaging Co.,

*Petitioner - Appellee*,

v.

Graphic Communication Conference, International Brotherhood of Teamsters & Local Union No. 77-P; Graphic Communications Conference, International Brotherhood of Teamsters & Local Union No. 727-S,

*Respondents - Appellants*.
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: June 10, 2013
Filed: September 5, 2013
_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

      Teamsters Local Unions 727-S and 77-P ("the Unions") appeal from the district court's order vacating an arbitrator's award of severance pay. Because the arbitrator was at least arguably construing or applying the collective bargaining agreement, a federal court must defer to the arbitrator's interpretation, and we therefore reverse.

I.

In 2009, Rio Tinto PLC agreed to sell to Bemis Company, Inc., three packaging plants operated by Rio Tinto's subsidiary, Alcan Packaging Company. The sale closed on March 1, 2010. The Unions represent the workers at the plants and were parties to a collective bargaining agreement with Alcan. After the sale was announced, Bemis informed the Unions that it would not adopt the terms of the agreement. Bemis and the Unions entered into negotiations. Bemis eventually hired all of the Alcan workers who applied to work for Bemis, though under less favorable terms of employment than the workers had enjoyed under their agreement with Alcan.

After the sale closed, the Unions filed a grievance against Alcan, claiming that Alcan violated the agreement. As relevant to this appeal, the Unions claimed that eligible workers at the three plants were entitled to severance pay. Alcan denied the grievance, and the agreement required the parties to submit the dispute to an arbitrator.

The relevant portion of the agreement, Appendix D, provides: "If the Company shall close a plant completely and permanently, employees whose employment shall be terminated as a result thereof and [who are eligible] shall be entitled to a Severance . . . ." Because the Unions and Bemis successfully completed their negotiations before the sale closed, there was a seamless transition on the day that Bemis took over, and operations at the plants never ceased. Alcan argued to the arbitrator, therefore, that it never closed the plants, so severance pay was not due under Appendix D. The Unions maintained that Alcan completely and permanently closed the plants—as far as the company was concerned—by selling them to Bemis, even though business at the plants continued uninterrupted following the sale.

The arbitrator ruled for the Unions. Alcan then filed this action in the district court, seeking to vacate the arbitrator's award of severance pay. The district court

granted Alcan's motion, concluding that the arbitrator's award of severance pay could not be reconciled with the plain meaning of Appendix D. The Unions appeal, and we review the district court's decision to vacate the arbitrator's award *de novo*. *Ace Elec. Contractors, Inc. v. Int'l Bhd. of Elec. Workers, Local Union No. 292*, 414 F.3d 896, 899 (8th Cir. 2005).

II.

Alcan's action to vacate the arbitrator's award arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Section 301 confers jurisdiction on federal courts over cases involving a breach of a collective bargaining agreement, *id.*, and it authorizes federal courts to fashion the substantive law that governs such labor disputes. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957). Except in limited circumstances, that body of law requires a court to defer to the arbitrator's interpretation. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

When Alcan and the Unions contracted to resolve their disputes via arbitration, they agreed to be bound by the arbitrator's interpretation of the agreement. We may not vacate an award merely because our construction of the agreement differs from the arbitrator's. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). If the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority, *that a court is convinced he committed serious error does not suffice to overturn his decision*." *Misco*, 484 U.S. at 38 (emphasis added). Only when an arbitrator issues an award that does not "draw its essence from the contract," because it reflects instead the arbitrator's "own notions of industrial justice," may a court vacate an arbitrator's decision. *Id.*

Alcan suggests that the Federal Arbitration Act, 9 U.S.C. § 10(a)(4), may provide for more vigorous judicial review than does § 301. If the Act applies, then

-3-

§ 10(a)(4) does not prescribe a different standard of review. The Supreme Court's most recent case applying § 10(a)(4) recited the § 301 standard and cited authorities arising under the latter statute. *See Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (citing *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000), *Misco*, 484 U.S. at 38, and *Enter. Wheel & Car Corp.*, 363 U.S. at 599). If there were a conflict between the statutes, moreover, we would apply § 301, because it is a specific directive to create the substantive law that governs collective bargaining agreements, and the specific governs over the general. *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1097-98 (8th Cir. 2004); *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 724 (7th Cir. 2002).

So we evaluate the arbitrator's decision under the deferential standard that long has governed § 301 cases. The arbitrator here began his analysis by quoting Appendix D and focusing on the issues as the parties had framed them. He recognized that Alcan was liable for severance pay only if two conditions were satisfied: Alcan must have closed the plants completely and permanently, and eligible employees must have been terminated as a result of the closures. The main question facing the arbitrator was whether the seamless transition meant that Alcan had not closed the plants.

After consulting the text of Appendix D and arbitral decisions interpreting similar agreements, the arbitrator concluded that Alcan completely and permanently closed the plants by selling them. Then, after analyzing the text and analogous arbitral precedents, the arbitrator concluded that the employees had been terminated as a result of the closures. In sum, the arbitrator's award has the hallmarks of an honest judgment that drew its essence from the agreement: he analyzed the text of the contract, consulted decisions interpreting similar contracts, and squarely addressed the parties' arguments.

-4-

Alcan contends that the district court properly vacated the award because the arbitrator's interpretation of the agreement conflicts with the ordinary meaning of the contract. The sale of the plants was not a closure, the company says, because Alcan did nothing to stop work or other operations at the plants, and the facilities continued to operate without interruption on the day of the sale. Without a closure, Alcan reasons, severance pay was not due under Appendix D, so the arbitrator exceeded his authority by effectively amending the agreement and dispensing his own brand of industrial justice.

This challenge to the award is insufficient to justify vacatur. For one thing, it is not so clear that the arbitrator's decision is contrary to the plain language of the contract. Alcan concedes that because the contract refers to whether "the Company" has closed the plant completely and permanently, the prospect of closure must be viewed from Alcan's point of view. If another company reopens the plant after Alcan closes it, even if the closure is for only a day or even an hour, then the reopening by another party does not vitiate a complete and permanent closure by Alcan. So the company is reduced to arguing that while a brief pause between Alcan's closure and Bemis's reopening would result in a complete and permanent closure by Alcan, there was no closure here because the transition was seamless. The arbitrator thought there was no meaningful distinction between the two scenarios under the contract. In his view, that a purchaser might reopen a plant, or even seamlessly continue operations, does not mean that *the seller* did not close it.

Even if the arbitrator was incorrect about that point, such a mistake is not sufficient reason to set aside the award. "[T]he parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *Misco*, 484 U.S. at 38. This is not a situation in which the arbitrator ignored the plain language of the contract, such as by applying the wrong agreement, *see Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440-41 (8th Cir. 1992), or

Appellate Case: 12-3272     Page: 5     Date Filed: 09/05/2013 Entry ID: 4072332

by relying heavily on parole evidence of the parties' bargaining history rather than the unambiguous terms of the agreement itself. *See Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431*, 102 F.3d 1464, 1468 (8th Cir. 1996). Nor is this appeal comparable to *Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184 (8th Cir. 1988), where there was no indication that the arbitrator arguably construed or applied the contract when he "disregarded" and "ignored" its plain language. *Id*. at 188, 189; *see Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1181 (D.C. Cir. 1991) (eschewing a "broad" reading of *Inter-City Gas*); *Dist. No. 72 & Local Lodge 1127 v. Teter Tool & Die*, 630 F. Supp. 732, 736 (N.D. Ind. 1986) (cited in *Inter-City Gas*, 845 F.2d at 187-88) (vacating arbitrator's award where arbitrator "disregarded" contract language and based decision "solely upon testimony pertaining to the parties' intent at the time of the contracting," such that the award drew its essence "not from the agreement, but rather from the negotiations").

This is a case, rather, in which the arbitrator at least arguably construed the relevant provision of the contract, but the company contends that he misread the agreement and committed serious error in his interpretation. In that situation, the arbitrator's decision must stand. *Misco*, 484 U.S. at 38. Erroneous textual analysis, like "improvident, even silly, factfinding," *id*. at 39, does not justify disregarding the decision of the arbitrator agreed upon by the parties to resolve their dispute over severance pay. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enter. Wheel & Car Corp.*, 363 U.S. at 599.

Alcan seeks support in *Smullin v. Mity Enterprises, Inc.*, 420 F.3d 836 (8th Cir. 2005), which applied the definition of "plant closing" in the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq. Under the statute, "plant closing" meant "the permanent or temporary shutdown of a single site of employment," *id*. § 2101(a)(2), which the regulations defined as "the effective

-6-

cessation of production or the work performed" by the facility. 20 C.F.R. § 639.3(b). Not surprisingly, this court determined that this definition was "facility-specific, not employer-specific," and that there was no "plant closing" when the plant in question did not miss even a day of operation. 420 F.3d at 838.

This case, of course, is not governed by the WARN Act, but by a contract under which the triggering event occurs "[i]f *the Company* shall close a plant completely and permanently." Even Alcan does not contend that this definition is facility-specific: the Company closes a plant "completely and permanently" even if a different company reopens the facility at a later time—otherwise, how would the parties ever know that a closure was "permanent"? If the arbitrator had decided this dispute based on the definition of "plant closing" in the WARN Act rather than by reference to the contract between the parties, then he truly would have dispensed his own brand of industrial justice.

\* \* \*

For the foregoing reasons, we reverse the judgment of the district court and remand the case with directions to confirm the arbitration award. We deny the request of the Unions for an award of attorneys' fees. Alcan acted promptly to seek an order vacating the arbitration award, and the company did not act dishonestly or in bad faith.

GRUENDER, Circuit Judge, dissenting.

I agree with the district court that this is the rare case in which we should vacate an arbitrator's award. The arbitrator here ignored the plain language of the collective bargaining agreement. When three plants are sold to another party and continue operating seamlessly with the same employees during and after that sale, the plants cannot have closed completely and permanently such that the seller must then

-7-

Appellate Case: 12-3272    Page: 7    Date Filed: 09/05/2013 Entry ID: 4072332

pay severance benefits. Yet the arbitrator here awarded severance benefits. The district court's judgment vacating this award should be affirmed.

Courts must give considerable deference to arbitration awards. On this point, the court and I agree. In a labor dispute such as this, the parties have "agreed to submit all questions of contract interpretation to the arbitrator." *Misco*, 484 U.S. at 36-37 (quoting *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567-68 (1960)). "[I]t is the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept." *Id.* at 37-38. As a result, "[a] reviewing court cannot overturn an arbitrator's award even if the court is convinced the arbitrator committed serious error so long as the arbitrator was arguably construing or applying the contract." *Excel Corp.*, 102 F.3d at 1467. But an arbitrator's authority to issue an award is not unlimited. As the court recognizes, *ante* at 3, if an arbitration award does not "draw[ ] its essence from the collective bargaining agreement" because it reflects the arbitrator's "own brand of industrial justice," then the court should vacate that award. *Enter. Wheel*, 363 U.S. at 597. That is to say, "[t]he arbitrator may not ignore the plain language of the contract," *Misco*, 484 U.S. at 38, or "interpret[ ] unambiguous language in any way different from its plain meaning." *Inter-City*, 845 F.2d at 187 (quoting *Teter Tool & Die*, 630 F. Supp. at 736). In so doing, the arbitrator "amends or alters the agreement and acts without authority." *Id.* Thus, where the arbitrator departs from the unambiguous language of the contract in granting an award, the court should vacate that award.

Here, the severance provision of the collective bargaining agreement is unambiguous. It states:

> If the Company shall close a plant completely and permanently, employees whose employment shall be terminated as a result thereof and who at the time shall have a length of continuous service with the

-8-

Appellate Case: 12-3272     Page: 8     Date Filed: 09/05/2013 Entry ID: 4072332

Company of five (5) years or more, shall be entitled to a Severance allowance as follows . . . .

By operation of this provision, qualifying employees are entitled to severance benefits only if (1) "the Company shall close a plant completely and permanently" and (2) that closure results in the termination of their employment. Although the collective bargaining agreement does not itself define the term "close," the term is commonly understood, and is defined, as meaning "[t]o conclude; to bring to an end." Black's Law Dictionary 271 (8th ed. 2004). As the district court correctly reasoned: "The word 'closed' is meant to distinguish it from 'open.' The word 'completely' is meant to distinguish it from 'partially.' The reference to 'permanently' is meant to distinguish it from 'temporarily.'" This unambiguous language should have made this an easy case. *Cf. Smullin*, 420 F.3d at 838 (concluding, in the context of the WARN Act, that "[i]t is *obvious*" that a plant does not close when employees at the plant "did not miss even a day of operation" (emphasis added)). Under questioning at the arbitration hearing, Mark Cooper, a witness for the Unions, conceded:

> Q: [D]o you have any information that would indicate that the [three plants] were ever closed even for a minute? I'm not asking about ownership, I'm just saying did they shut the places down?
>
> A: No.

Furthermore, as the court notes, *ante* at 2, Bemis hired all of the Alcan workers who applied to work for Bemis. Accordingly, since the plants at issue did not "close"—much less "close . . . completely and permanently"—and since the employees were not terminated as a result thereof, the severance provision was not triggered.

-9-

The arbitrator attempts to sidestep this self-evident conclusion by asserting that "when a company goes out of a line of business by selling a plant it has, as far as its employees in that plant are concerned, completely and permanently closed." The court asserts that this interpretive effort by the arbitrator, with its "hallmarks of an honest judgment," disposes of this case. *Ante* at 4-6. According to the court, if the arbitrator makes any attempt at interpretation, as the arbitrator did here, the arbitrator's decision must stand. Not so. We have explained that "if the arbitrator 'interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority.'" *Inter-City*, 845 F.2d at 187 (quoting *Teter Tool & Die*, 630 F. Supp. at 736) (alteration in original). In other words, "the arbitrator may not disregard or *modify* unambiguous contract provisions." *Id.* (emphasis added). Accordingly, an interpretive effort by the arbitrator does not mean that the arbitrator's decision must stand, if in so doing the arbitrator modifies unambiguous language.

The arbitrator's attempt to introduce ambiguity into the severance provision falls flat.[1] According to the arbitrator, plant closure is employer-specific as opposed to facility-specific. That is to say, when Alcan sold its plants to Bemis, the plants were permanently and completely closed as between Alcan and its employees. That closure is unambiguously facility-specific becomes obvious when the severance provision is viewed in the larger context of the collective bargaining agreement, as

---

[1] The court perceives ambiguity in the severance provision by imagining a scenario of a "brief pause" between the seller's closure of a plant and the buyer's reopening of it. The court then asserts that Alcan is reduced to arguing that there is a meaningful distinction between (1) a seamless transition from buyer to seller and (2) the court's imagined "brief pause" scenario. *Ante* at 5. Since both parties agree that there was a seamless transition from Alcan to Bemis, the question of whether the court's "brief pause" scenario amounts to a complete and permanent closure under the severance provision is not before the court. Thus, we need not decide this question. Even so, the court's ability to imagine a hard case does not make the severance provision ambiguous in this easy case.

-10-

applied by the arbitrator. Specifically, the successors and assigns clause of the collective bargaining agreement states: "[N]o merger, purchase, sale, transfer, assignment or consolidation, shall terminate or suspend this contract or relieve an employer . . . a transferee, purchaser, successor, or assignee, from the obligation to comply with the terms and conditions of this contract." Since Bemis contracted around this provision, the arbitrator applied this provision against Alcan.[2] Thus, even though Alcan may no longer be the employer, the Bemis employees, by operation of this clause, are still entitled to the benefits of the collective bargaining agreement. As counsel for the Unions conceded at oral argument, Alcan is therefore required to "make up the differences" between the Alcan and the Bemis contracts. This is significant because, as the court notes, *ante* at 2, Bemis hired Alcan's employees under less favorable terms than the workers had under their collective bargaining agreement with Alcan. With this established, the incongruity of the arbitrator's award comes into full view. The arbitrator required that (1) Alcan honor the collective bargaining agreement as if the Bemis employees were still working for Alcan and that (2) Alcan pay severance benefits due to a complete and permanent closure of the plants. Both cannot be true. Either the plants closed, leaving Alcan on the hook for severance benefits, or the plants did not close, leaving Alcan on the hook for full pay and benefits as provided in the Alcan collective bargaining agreement. The arbitrator, however, ignored this "either-or" by awarding a double recovery, a windfall surely not contemplated by the collective bargaining agreement. In so doing, the arbitrator "dispense[d] his own brand of industrial justice." *Enter. Wheel*, 363 U.S. at 597.

The arbitrator here ignored the unambiguous language of the severance provision. In awarding severance benefits, the arbitrator was "not construing an ambiguous contract term, but rather was imposing a new obligation." *Keebler Co. v. Milk Drivers & Dairy Employees, Local No. 471*, 80 F.3d 284, 288 (8th Cir. 1996). I therefore respectfully dissent.

---

[2]The district court affirmed this finding, and Alcan did not appeal this ruling.

-11-

Appellate Case: 12-3272    Page: 11    Date Filed: 09/05/2013 Entry ID: 4072332